**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **EDWARD M. WEAVER,** | No. 2:13-cv-07374-SJF-ARL |
| **Plaintiff,** | **PLAINTIFF EDWARD M. WEAVER'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF LAW IN SUPPORT OF MOTION** |
| **v.** | |
| **AXIS SURPLUS INSURANCE COMPANY,** | |
| **Defendant.** | |

  **PLEASE TAKE NOTICE** that upon the accompanying Memorandum of Law and

Statement of Facts Pursuant to Local Rule 56.1, the Affirmation of James W. Spertus and the

exhibits attached thereto, the files and records in this case, and any evidence or argument that

may be presented at a hearing on this matter, Plaintiff Edward M. Weaver, by his attorneys,

Spertus, Landes & Umhofer, LLP, will, and hereby does, move this Honorable Court, at a date

and time set by the Court at the United States District Court, Eastern District of New York, 100

Federal Plaza, Central Islip, New York, 11722, before the Honorable Sandra J. Feuerstein, for an

Order pursuant to Rule 56 of the Federal Rules of Civil Procedure granting partial summary

judgment on Mr. Weaver's first and third causes of action for breach of insurance contract (duty

to defend) and declaratory relief and ordering that Defendant Axis Surplus Insurance Company

//

//

("AXIS") has a duty to defend Mr. Weaver against the Indictment filed against Mr. Weaver in

Case No. 2:13-cr-00120-SJF.

Respectfully submitted,

Dated: February 7, 2014                    SPERTUS, LANDES & UMHOFER, LLP


_____
James W. Spertus (admitted *Pro Hac Vice*)
Ezra D. Landes (admitted *Pro Hac Vice*)
1990 South Bundy Dr., Ste. 705
Los Angeles, California 90025
Tel: (310) 826-4700
Fax: (310) 826-4711
Email: jim@spertuslaw.com
Email: ezra@spertuslaw.com
Attorneys for Plaintiff Edward M. Weaver

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

EDWARD M. WEAVER,

|  |  |
|---|---|
| Plaintiff, | No. 2:13-cv-07374-SJF-ARL |
| v. |  |
| AXIS SURPLUS INSURANCE COMPANY, |  |
| Defendant. |  |

## PLAINTIFF EDWARD M. WEAVER'S
## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

JAMES W. SPERTUS (SBN 159825)
*Admitted pro hac vice*
EZRA D. LANDES (SBN 253052)
*Admitted pro hac vice*
SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Drive, Suite 705
Los Angeles, California 90025
Tel: (310) 826-4700
Fax: (310) 826-4711
Email: jim@spertuslaw.com
Email: ezra@spertuslaw.com
*Attorneys for Edward M. Weaver*

## TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL BACKGROUND ......................................................................................2

    A.      The Underlying Policy. ...................................................................................2

    B.      The Underlying Indictment. .............................................................................4

    C.      The Underlying Coverage Dispute. .................................................................5

III.    ARGUMENT ...............................................................................................................9

    A.      Standards Applicable To This Motion. ............................................................9

    B.      Section V.A. Of The Policy Does Not Provide A Basis For AXIS To Deny
           Mr. Weaver A Defense Of The Indictment. ...................................................11

          1.      Section V.A. does not apply because the Maryland AG's
                November 26, 2007 letter did not constitute a "D&O Claim." .................11

                i.      The Maryland AG's letter does not make a demand for
                      non-monetary relief ...............................................................11

                ii.     The Maryland AG's letter did not commence an
                      administrative proceeding by providing written notice
                      identifying Multivend as an entity against whom a formal
                      proceeding may be commenced ...............................................16

          2.      Section V.A. does not apply because even if the Maryland AG's
                November 26, 2007 letter constitutes a "D&O Claim," it is not a
                Claim that arises from any "Wrongful Act." .............................................20

          3.      Section V.A. does not apply because Section V.A. relates only to
                the number of "limits of liability," and Mr. Weaver is not
                attempting to obtain an additional limit of liability through his
                tender of the Indictment. ...........................................................20

    C.      Section IV.A.2. Of The Policy Does Not Provide A Basis For AXIS To
           Deny Mr. Weaver A Defense Of The Indictment. ................................................22

IV.    CONCLUSION ............................................................................................................24

i

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

<u>CASES</u>

*ABM Mgmt. Corp. v. Harleysville Worcester Ins. Co.*,
112 A.D.3d 763 (N.Y.A.D. 2013) .................................................................................. 10, 22

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..................................................................................................... 11

*Automobile Ins. Co. of Hartford v. Cook*,
7 N.Y.3d 131 (2006) ...................................................................................................... 9

*BP Air Conditioning Corp. v. One Beacon Ins. Group*,
8 N.Y.3d 708 (2007) ...................................................................................................... 9

*Breed v. Ins. Co. of N. Am.*,
46 N.Y.2d 351 (1978) .................................................................................................. 10

*Diamond Glass v. Twin City Fire Ins. Co.*,
2008 WL 4613170 (S.D.N.Y. Aug. 18, 2008) ........................................................... 1, 14, 15

*Employers' Fire Ins. Co. v. ProMedica Health Sys.*, Inc.,
2011 WL 6937488 (N.D. Ohio 2011) ........................................................................ 1, 11, 12

*Employers' Fire Ins. Co. v. ProMedica Health Sys., Inc.*,
524 Fed. Appx. 241 (6th Cir. 2013) ............................................................... 1, 12, 18, 20, 23

*Evanston Insurance Co. v. GAB Business Services, Inc.*,
131 A.D.2d 180 (N.Y. App. Div. 1987) ......................................................................... 15

*Federal Ins. Co. v. Int'l Bus. Machs. Corp.*,
18 N.Y.3d 642 (2012) ........................................................................................... 10, 22, 23

*Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*,
91 N.Y.2d 169 (1997) .................................................................................................. 10

*Helfand v. Nat'l Union Fire Ins. Co.*,
10 Cal.App.4th 869 (1992) ........................................................................................... 21

*Homestead Ins. Co. v. Am. Empire Surplus Lines Ins. Co.*,
44 Cal.App.4th 1297 (1996) ......................................................................................... 21

*James River Ins. Co. v. Kemper Cas. Ins. Co.*,
   585 F.3d 382 (7th Cir. 2009).................................................................... 21

*James River Ins. Co. v. Rinella & Rinella, Ltd.*,
   2008 WL 4211150 (N.D. Ill. 2008)........................................................ 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................... 11

*Matter of Reliance Ins. Co.*,
   55 A.D.3d 43 (N.Y. App. Div. 2008)...................................................... 15

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Ambassador Group, Inc.*,
   691 F. Supp. 618 (E.D.N.Y. 1988)......................................................... 21

*Rexnord Holdings, Inc. v. Bidermann*,
   21 F.3d 522 (2d Cir. 1994).............................................................. 10, 11

*Technicon Elecs. Corp v. Am. Home Assur. Co.*,
   74 N.Y.2d 66 (1989) ................................................................................ 9

## OTHER AUTHORITIES

*Black's Law Dictionary* 86 (9th ed. 2009).................................................... 18

## PLAINTIFF EDWARD M. WEAVER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.      INTRODUCTION

This insurance dispute centers entirely on the single issue of whether the underlying Indictment against Plaintiff Edward M. Weaver, filed by the United States Attorney's Office for the Southern District of Florida on October 2, 2012, is part of the same "Claim" as a letter sent by the Maryland Attorney General's Office ("Maryland AG") to the insured five years earlier, on November 26, 2007, requesting that the insured voluntarily provide the Maryland AG with certain "information and materials."  As a matter of law, the Maryland AG's letter did not constitute a "Claim" as that term is defined in the underlying Policy, and even if it constituted a "Claim" the letter did not raise any "Wrongful Acts" as that term is defined in the Policy. Accordingly, the Policy provisions raised by Defendant AXIS as the bases to deny Mr. Weaver a defense against the Indictment are not applicable, and Mr. Weaver is entitled to summary judgment on his first and third causes of action.

In support of its position that the Maryland AG's letter precludes a defense, AXIS's February 19, 2013 coverage determination letter relies heavily on the district court's holding in *Employers' Fire Ins. Co. v. ProMedica Health Sys.*, Inc., 2011 WL 6937488 at *5 (N.D. Ohio 2011).  AXIS's denial letter cites to this case on at least five separate occasions in support of various propositions.  However, the Sixth Circuit expressly overruled the district court's holding in that case, specifically with regard to the issues for which AXIS has relied on the decision to deny a defense.  *Employers' Fire Ins. Co. v. ProMedica Health Sys., Inc.*, 524 Fed. Appx. 241 (6th Cir. 2013) ("*ProMedica*").  Separately, AXIS's position in this case directly contradicts the position previously taken by AXIS while defending itself against another insured in *Diamond Glass v. Twin City Fire Ins. Co.*, 2008 WL 4613170 (S.D.N.Y. Aug. 18, 2008), and AXIS should

1

not be permitted to change its position on an important coverage issue whenever it suits AXIS's interests at the moment.

There is no genuine issue of material fact that precludes a finding on summary judgment that AXIS has a duty to defend Mr. Weaver against the Indictment. The Court can determine as a matter of law that the Maryland AG's letter does not support the position taken by AXIS in its denial letter. Accordingly, Mr. Weaver's motion for partial summary judgment should be granted.

## II.     FACTUAL BACKGROUND

### A.  The Underlying Policy.

Plaintiff Edward M. Weaver formerly served as the President and Chief Executive Officer of Multivend, LLC d/b/a Vendstar ("Multivend"), a now-defunct vending machine sales company. (Plaintiff's Statement of Material Facts Pursuant to Rule 56.1 ("SMF"), ¶ 1 (citing Affidavit of James W. Spertus ("Spertus Aff."), Ex. A at ¶ 1)). Defendant AXIS issued to Multivend Privatus Policy Number ENN588818 for the policy period February 20, 2010 through February 20, 2014 (as extended by Endorsement No. 8) (the "Policy"). (SMF, ¶ 2 (citing Spertus Aff., Ex. A at ¶ 7; Spertus Aff., Ex. B at ¶ 4; Spertus Aff., Ex. C)). The "Pending and Prior Claim Date" for the Policy is February 20, 2008. (*Id.*) Under the Policy, the insured is Multivend and any past, present or future directors, officers, trustees, managers or employees of Multivend. (SMF, ¶ 3 (Spertus Aff., Ex. A at ¶¶ 8, 12; Spertus Aff., Ex. D at p.4 n.4). AXIS does not dispute that Mr. Weaver qualifies as an insured under the Policy. (*Id.*)

The Policy provides a $5 million limit of liability on behalf of the insureds for:

> **Loss** . . . arising from any **D&O Claim** for a **Wrongful Act** . . . first made against such Insured . . . during the **Policy Period** or Extended Reporting Period, if applicable, and reported in writing to the Insurer as soon as practicable after any of the **Policyholder's Executive Officers** first becomes

2

aware of such **Claim**, but in no event later than sixty (60) days after the
expiration of the **Policy Period** or Extended Reporting Period, if applicable.

(SMF, ¶ 4 (citing Spertus Aff., Ex. C at p.1 of Declarations & Section I(A))).

The Policy contains the following definitions relevant to this dispute:

- **Loss** means the amount(s) which the Insureds become legally obligated to pay
  on account of a **Claim**, including damages, judgments, any award of pre-
  judgment and post-judgment interest, settlement amounts, costs and fees
  awarded pursuant to judgments, and **Defense Costs**.

- **Defense Costs** means reasonable and necessary legal fees and expenses . . .
  incurred by or on behalf of the **Insureds** in defending, settling, appealing or
  investigating **Claims**, and the premiums for appeal, attachment or similar bonds.

- **Claim** means any **D&O Claim**.

- **D&O Claim** means:

  > a. a written demand against an **Insured** for monetary or non-monetary
  > relief;

  > b. a civil, arbitration, administrative or regulatory proceeding against any
  > **Insured** commenced by: . . .

  > > (ii) the filing of a notice of charge, investigative order or like
  > > document; or

  > > (iii) written notice or subpoena from an authority identifying such
  > > **Insured** as an entity or person against whom a formal proceeding
  > > may be commenced; or

  > c. a criminal investigation or proceeding against any **Insured Individual**
  > commenced by:

  > > (i) the return of an indictment, information, or similar pleading[.]

- **Wrongful Act** means:

  > a. any actual or alleged error, misstatement, misleading statement, act,
  > omission, neglect, or breach of duty by:

  > > (i) any **Insured Individual** in their capacity as such; [or] . . .

3

                    (iii) the **Policyholder** with respect to Section I. Insuring Agreement A; or

- **Interrelated Wrongful Acts** means any and all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.

(SMF, ¶ 5 (citing Spertus Aff., Ex. C at Sections III.A.2., III.A.6., III.A.7., III.B.1., III.B.2., III.B.5.)).

### B. The Underlying Indictment.

By letter dated September 27, 2012, Mr. Weaver's counsel provided notice to AXIS that Mr. Weaver received a letter from the United States Department of Justice advising Mr. Weaver that he was the target of a federal grand jury investigation in the Southern District of Florida in connection with certain activities at Multivend.  (SMF, ¶ 6 (citing Spertus Aff., Ex. E; Spertus Aff., Ex. B at ¶ 21)).  On or about October 10, 2012, an indictment filed on October 2, 2012 was unsealed in the United States District Court for the Southern District of Florida, naming Mr. Weaver and others in grand jury charges of conspiracy, mail fraud and wire fraud in connection with Mr. Weaver's and his co-defendants' operation of Multivend (the "Indictment").  (SMF, ¶ 7 (citing Spertus Aff., Ex. A at ¶ 10; Spertus Aff., Ex. F)).  The Indictment alleged Wrongful Acts, as that term is defined in the Policy, by Mr. Weaver.  (SMF, ¶ 8 (citing Spertus Aff., Ex. F; Spertus Aff., Ex. C at Section III.B.5)).

On October 23, 2012, AXIS sent a letter to Mr. Weaver's counsel advising that AXIS was informed that the Indictment had been filed and that AXIS was "evaluating and investigating the materials submitted (including the Indictment) and the coverage issues in this matter."  (SMF, ¶ 9 (citing Spertus Aff., Ex. G; Spertus Aff., Ex. B at ¶ 23)).  AXIS further informed Mr.

Weaver's counsel that AXIS will provide Mr. Weaver's counsel "with AXIS's coverage determination as soon as possible." (*Id.*)

**C. The Underlying Coverage Dispute.**

On December 11, 2012, AXIS informed Mr. Weaver in writing that there was no coverage available under the Policy for the Indictment, and that AXIS will not defend Mr. Weaver or his co-defendants against the Indictment. (SMF, ¶ 10 (citing Spertus Aff., Ex. D at pp.2, 6)). In its December 11, 2012 letter, AXIS explained that coverage was not available because (1) AXIS deems the October 2, 2012 Indictment to be a Claim "first made" prior to the inception of the Policy's Policy Period; and (2) Exclusion IV.A.2 of the Policy operates as another independent basis to exclude coverage for the Indictment. (SMF, ¶ 11 (citing Spertus Aff., Ex. D at pp.4-6)).

With regard to AXIS's first ground for denying coverage, AXIS argued that the Indictment was not a claim "first made" during the Policy Period because approximately five years earlier, on November 26, 2007, the Office of the Maryland Attorney General (the "Maryland AG") sent a letter to Multivend that, according to AXIS, constituted a D&O Claim under the Policy because it purportedly "(1) made a written demand for certain non-monetary relief, including that Multivend 'immediately cease all offers and sales of the Vendstar business opportunity to Maryland residents;' and (2) commenced an administrative proceeding against Multivend by providing written notice identifying Multivend as an entity 'against whom a formal proceeding may be commenced.'" (SMF, ¶ 12 (citing Spertus Aff., Ex. D at pp.4-5)). According to AXIS, "[a]s such, on November 26, 2007 the [Maryland AG] made a D&O Claim against Multivend." AXIS argued that because the Maryland AG letter constitutes a D&O

5

Claim, Section V.A. of the Policy applies to exclude coverage.  (*Id.*)  Section V.A. of the Policy provides in pertinent part:

> V. LIMITS OF LIABILITY, RETENTION, DEFENSE AND SETTLEMENT
>
> A.  Limits of Liability . . .
>
> All **Claims,** including all **D&O Claims** . . . arising from the same **Wrongful Act**, **Wrongful Third Party Act**, and all **Interrelated Wrongful Acts** shall be deemed one **Claim** and such **Claim** shall be deemed to be first made on the earlier date that: (1) any of the **Claims** is first made against an **Insured** under this Policy or any prior policy, or (2) valid notice was given by the **Insureds** under this Policy or any prior policy of any **Wrongful Act**, **Wrongful Third Party Act**, or any fact, circumstance, situation, event, transaction or cause which underlies such **Claim**.  Coverage under this Policy shall apply only with respect to **Claims** deemed to have been first made during the **Policy Period** and reported in writing to the Insurer in accordance with the terms herein.

(SMF, ¶ 13 (citing Spertus Aff., Ex. D at p.4; Spertus Aff., Ex. C at Section V.A)).

In its December 11, 2012 letter, AXIS argued that the Maryland AG's letter constitutes a "D&O Claim that arises from the same Wrongful Acts as, and/or Interrelated Wrongful Acts with, the Indictment. . . .  Thus, pursuant to Section V.A. of the Policy, the prior D&O Claim made by the [Maryland AG] and the Indictment 'shall be deemed one Claim,' and such Claim shall be deemed to be 'first made' on November 26, 2007."  (SMF, ¶ 14 (citing Spertus Aff., Ex. D at pp.4-5)).

Multivend did not tender the November 26, 2007 letter for coverage since the letter did not trigger coverage for a defense.  The Maryland AG's letter states, in part, the following:

> The Division has received information **suggesting** that Multi Vend **may** be offering and selling vending machine business opportunities in Maryland without providing a business opportunity disclosure statement as required by the Maryland Business Opportunity Act.  The Division has also received information **suggesting** that Multi Vend makes unlawful earnings representations about the Vendstar business opportunity.

> **So that we may determine the extent of your activities and your compliance with the Maryland Business Opportunity Act**, please forward to me, within fifteen (15) days of your receipt of this letter, the following **information and materials** related to the period January 1, 2004 to the present.

The letter then proceeds to list several categories of "information and materials" requested by the Maryland AG.  The letter then concludes:

> The Division further requests that Multi Vend acknowledge in writing that it will immediately cease all offers and sales of the Vendstar business opportunity to Maryland residents **pending the outcome of this inquiry**. Please confirm whether the company agrees to **voluntarily** cease offering and selling the Vendstar business opportunity [in] this State and with Maryland residents **at this time**.
>
> Your prompt and complete response to this letter within the time specified is appreciated.  **Failure to respond** may result in more formal legal action by the Division.

(SMF, ¶ 15 (citing Spertus Aff., Ex. H; Spertus Aff., Ex. A at ¶ 12)).

AXIS's first stated grounds for denying coverage was without merit because: (1) Section V.A. of the Policy does not apply because the Maryland AG's November 26, 2007 letter did not constitute a D&O Claim because it did not (a) make a demand for non-monetary relief or (b) commence an administrative proceeding against Multivend by providing written notice identifying Multivend as an entity 'against whom a formal proceeding may be commenced;'" (2) separately, Section V.A. does not apply because even if the Maryland AG's letter constitutes a Claim, it is not a Claim that arises from any Wrongful Act, as that term is defined in the Policy, since the Maryland AG's letter does not make any allegations; and (3) separately, Section V.A. does not apply because Section V.A. of the Policy relates only to the number of limits of liability available to the Insured, and Mr. Weaver is not attempting to obtain an additional $5 million limit of liability through his tender of the Indictment.

With regard to AXIS's second ground for denying coverage, Section IV.A.2. of the

Policy provides the following exclusion:

> The insurer shall not be liable for **Loss** arising from any **Claim** made against any **Insured**:
>
>> 2.  based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:
>>
>>> a. any demand, suit or other proceeding pending, or order, decree or judgment entered, against any **Insured** on or prior to the applicable Pending or Prior Claim Date set forth in Item 8 in the Declarations, [February 20, 2008], or any **Wrongful Act,** fact, circumstance or situation underlying or alleged therein; or
>>>
>>> b. any other **Wrongful Act** whenever occurring, which together with a **Wrongful Act** described in a. above, constitute **Interrelated Wrongful Acts**[.]

(SMF, ¶ 16 (citing Spertus Aff., Ex. D at pp.5-6; Spertus Aff., Ex. C at Section IV.A.2.)).

AXIS argued that Subsection a. of this exclusion applies to exclude coverage because the

Indictment was purportedly "based upon, arises out of, or involves" the Maryland AG's

November 26, 2007 letter, which purportedly constituted "a demand or other proceeding pending

against any Insured (Multivend) prior to the February 20, 2008 Pending or Prior Claim Date."

(SMF, ¶ 17 (citing Spertus Aff., Ex. D at p.6)).  AXIS further argued that Subsection b. of the

exclusion applies because the Indictment is purportedly "based upon, arises out of, or involves"

"Wrongful Acts that, together with the Wrongful Acts at issue in the [Maryland AG's letter],

constitute Interrelated Wrongful Acts."  (SMF, ¶ 18 (citing Spertus Aff., ¶ 5, Ex. D at p.6)).

AXIS's second stated ground for denying coverage was without merit because: (1) the

exclusion set forth in Section IV.A.2. does not apply because the Maryland AG's letter was not a

"demand, suit or other proceeding pending" against any Insured prior to the February 20, 2008

Pending or Prior Claim Date; and (2) separately, the exclusion set forth in Section IV.A.2. does

not apply because the Indictment and the Maryland AG's letter cannot constitute Interrelated Wrongful Acts because the Maryland AG's letter does not arise from any Wrongful Acts, as that term is defined in the Policy, because the Maryland AG's letter does not make any allegations.

On January 18, 2013, Mr. Weaver responded to AXIS's December 11, 2012 denial letter with detailed points and authorities challenging AXIS's coverage position. (SMF, ¶ 19 (citing Spertus Aff., Ex. I; Spertus Aff., Ex. A at ¶ 15)). On February 19, 2013, AXIS responded to Mr. Weaver's January 18, 2013 letter with a letter rejecting Mr. Weaver's arguments and further confirming in writing that AXIS will not defend Mr. Weaver or his co-defendants against the Indictment. (SMF, ¶ 20 (citing Spertus Aff., Ex. J; Spertus Aff., Ex. A at ¶ 23)).

### III. ARGUMENT

**A. Standards Applicable To This Motion.**

Under New York law, "it is well settled that an insurer's 'duty to defend its insured is "exceedingly broad" and an insurer will be called upon to provide a defense whenever the allegations of the complaint 'suggest . . . a reasonable possibility of coverage.'" *BP Air Conditioning Corp. v. One Beacon Ins. Group*, 8 N.Y.3d 708, 714 (2007) (quoting *Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)). "If a complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend.'" *BP Air Conditioning Corp.*, 8 N.Y.3d at 714 (quoting *Technicon Elecs. Corp v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 73 (1989)). In this case, AXIS does not deny that, absent an additional basis within the Policy to deny coverage, the underlying Indictment raises Wrongful Acts that potentially fall within the protections of the Policy. Rather, AXIS argues that, based on its construction of certain provisions within the Policy (specifically Sections V.A. and IV.A.2.), AXIS can deny Mr. Weaver a defense. "To be relieved of its duty to defend on the

9

basis of a policy exclusion, the insurer bears the <u>heavy burden</u> of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997) (emphasis added).

"In construing policy provisions defining the scope of coverage pursuant to a policy of insurance, courts 'first look to the language of the policy' reading it 'in light of common speech and the reasonable expectations of a businessperson.'" *ABM Mgmt. Corp. v. Harleysville Worcester Ins. Co.*, 112 A.D.3d 763 (N.Y.A.D. 2013) (citations omitted).  "'Unambiguous provisions of an insurance contact must be given their plain and ordinary meaning.'" *Id.*  "The issue of whether policy language is ambiguous and interpretation of ambiguous provisions are questions of law for the court." *Id.*  "'Thus the mere assertion by one that contract language means something to him or her, where it is otherwise clear, unequivocal and understandable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact.'" *Id.*  If "there is a 'reasonable basis for a difference of opinion' as to the meaning of the policy" then "the language at issue would be deemed to be ambiguous and thus interpreted in favor of the insured." *Federal Ins. Co. v. Int'l Bus. Machs. Corp.*, 18 N.Y.3d 642, 646 (2012) (citations omitted) (citing *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 353 (1978) ("recognizing 'the general rule that ambiguities in an insurance policy are to be construed against the insurer").

"Summary judgment is appropriate 'if the pleadings . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522,

10

525 (2d Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "Once

the moving party properly supports its motion for summary judgment, the non-moving party

must establish a genuine issue of material fact in order to preclude a grant of summary

judgment." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86

(1986)).  "'The mere existence of *some* alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment.'" *Id.* (quoting *Anderson*, 477

U.S. at 247-48).  As set forth below in great detail, as a matter of law, the Maryland AG's

November 26, 2007 letter, when applying the "plain and ordinary meaning" of Sections V.A. and

IV.A.2. of the Policy, does not provide AXIS with a basis to deny Mr. Weaver a defense, and

Mr. Weaver, therefore, is entitled to partial summary judgment on his claims.

**B.  Section V.A. Of The Policy Does Not Provide A Basis For AXIS To Deny Mr. Weaver A Defense Of The Indictment.**

**1.  Section V.A. does not apply because the Maryland AG's November 26, 2007 letter did not constitute a "D&O Claim."**

**i.  The Maryland AG's letter does not make a demand for non-monetary relief.**

In its February 19, 2013 letter, AXIS argued that the Maryland AG's letter falls within

Subsection a. of the Policy's definition for "D&O Claim" because  it "constitutes a demand for

'non-monetary relief.'  (Spertus Aff., Ex. J  at p.6).  Specifically, AXIS argued that the Maryland

AG's letter "included a demand that Multivend 'acknowledge in writing that it will immediately

cease all offers and sales of the Vendstar business opportunity to Maryland residents.'"  (*Id.*)

AXIS argued that this request "'is a type of injunctive relief' since it 'had the practical effect,

and purpose of a temporary restraining order.'"  (*Id.* at p.7 (quoting *Employers' Fire Ins. Co. v.

ProMedica Health Sys.*, Inc., 2011 WL 6937488 at *5 (N.D. Ohio 2011)).  According to AXIS,

"[t]his is precisely the type of 'written demand for non-monetary relief' that courts have held

11

trigger D&O policy 'claim' definitions similar that that of Subsection a. of the AXIS Policy."
(*Id.* at p.6 (citing *Employer' Fire Ins. Co.*, 2011 WL 6937488 at *5)).

In support of this argument, AXIS cites exclusively to a district court decision that the Sixth Circuit expressly overruled with respect to this very issue. *Employers' Fire Ins. Co. v. ProMedica Health Sys., Inc.*, 524 Fed. Appx. 241 (6th Cir. 2013) ("*ProMedica*"). In *ProMedica*, the insurer "OneBeacon denied coverage to ProMedica for the costs of defending administrative and civil actions brought by the Federal Trade Commission ("FTC") to enjoin ProMedica's acquisition of a suburban Toledo hospital." *Id.* at 242. Under the policy in that case, the definition of "claim" included "a written demand for monetary, non-monetary or injunctive relief." *Id.* at 243.

The chronology of events in *ProMedica* were as follows: "On July 15, 2010, the FTC sent a letter to ProMedica informing ProMedica that it would be 'conducting a non-public preliminary investigation to determine whether the acquisition of St. Luke's by ProMedica may be anticompetitive and in violation of Section 7 of the Clayton Act.'" *Id.* "On July 16, 2010, the FTC sent a second letter to ProMedica requesting copies of specified documents and additional information." *Id.* "On July 29, 2010, representatives from ProMedica and St. Luke's met with FTC staff members in Washington, D.C., to discuss the acquisition. ProMedica voluntarily agreed to delay closing of the transaction until August 27, 2010, to allow additional time for the FTC to complete its investigation." *Id.* "The FTC stated that the investigation was likely to extend beyond the August 27, 2010 closing date. It discussed the possibility of a 'Hold Separate Agreement,' by which ProMedica would agree 'for a limited time period' to limit the integration of St. Luke's into its healthcare system in order 'to maintain the independent competitive viability of St. Luke's.'" *Id.* at 244-45. "On August 9, 2010, the FTC issued a resolution

12

authorizing the use of compulsory process in connection with its investigation.  On August 10, 2010, the FTC sent a letter to ProMedica proposing the terms of the 'Hold Separate Agreement' and . . . ProMedica agreed to the Hold Separate Agreement on August 18, 2010."  *Id.* at 245.  On August 13, 2010, the FTC subpoenaed employees of ProMedica and St. Luke's.  It also issued subpoenas *duces tecum* and Civil Investigative Demands ("CIDs") to the entities themselves on August 25, 2010."  *Id.*  "On January 6, 2011, the FTC commenced an administrative action against ProMedica, asserting that . . . ProMedica's acquisition of St. Luke's violated Section 7 of the Clayton Act.  The following day, on January 7, 2011, the FTC sued in district court for a temporary restraining order and a preliminary injunction."  *Id.*  "On January 13, 2011, ProMedica notified OneBeacon of the litigation by the FTC."  OneBeacon denied coverage on the ground "'a Claim ... was first made on or around August 9, 2010, when the FTC issued a resolution authorizing the commencement of a formal investigation,' or, alternatively, 'the Claim was first made on or around August 18, 2010, when the Hold Separate Agreement was executed.'"  *Id.*

"The district court granted summary judgment to OneBeacon, finding that a claim arose in August 2010."  *Id.* at 246.  However, the Sixth Circuit reversed the district court and held "that a 'claim' did not arise until January 2011 when the FTC initiated administrative and civil actions against ProMedica."[1]  *Id.* at 242.  In ruling in ProMedica's favor, the Sixth Circuit expressly rejected the district court ruling relied upon by AXIS in its coverage denial letter that the Hold

---

[1] Significantly, in *ProMedica*, the 2010 activities that did not constitute Claims and the 2011 activities that rose to the level of Claims were both initiated by the FTC.  By comparison, the parties who sent the 2007 Maryland AG letter and filed the 2012 Indictment were not even part of the same government body, the former being state officials and the latter being the federal government.

Separate Agreement entered in August 2010 "is a type of injunctive relief" since it "had the practical effect, and purpose of a temporary restraining order."  (Spertus Aff., Ex. J  at p.7).  The Sixth Circuit expressly held: "[E]ven if the parties' agreement served a purpose similar to an injunction, the Hold Separate Agreement was not *itself* an injunction, which may only be issued by a court.  It was not a 'written demand' for an injunction, and it did not 'commence' a 'proceeding' seeking an injunction.  The Hold Separate Agreement was a contract by which ProMedica voluntarily entered into an agreement with the FTC."  *Id.* at 252.  Similarly in the case at bar, the Maryland AG's request that Multivend "voluntarily" cease offering the business opportunity to Maryland residents "at this time" "pending the outcome of this inquiry," a less formal agreement than the Hold Separate Agreement in *ProMedica*, is not a "type of injunctive relief."  The *ProMedica* court further expressed doubt that the "request" to enter the Hold Separate Agreement even qualifies as a "demand," under the plain and ordinary meaning of those terms, and therefore cannot constitute a "demand for non-monetary relief."  *Id.* at 252. Similarly, the Maryland AG's request that Multivend "voluntarily cease" offering the business opportunity to Maryland residents only "at this time" "pending the outcome of this inquiry" was not a "demand."

The Sixth Circuit's holding in *ProMedica* is consistent with the holdings of New York courts that have rejected a broad interpretation of the phrase "demands for non-monetary relief." *See Diamond Glass v. Twin City Fire Ins. Co.*, 2008 WL 4613170, at *4 (S.D.N.Y. Aug. 18, 2008) (where subpoenas and search warrants did not constitute "demands for non-monetary relief); *Evanston Insurance Co. v. GAB Business Services, Inc.*, 131 A.D.2d 180 (N.Y. App. Div. 1987) (holding that a "30-day notice of deficiencies" did not constitute a "demand . . . for money or services" and was not a "claim" because "the letter merely contained statements of

dissatisfaction . . . a demand for future performance in accordance with the contract, and a warning that failure to correct the deficiencies listed might result in cancellation of the contract" and "did not assert or refer to the existence of a claim for damages, and it did not include a reservation of rights to claim damages"); *Matter of Reliance Ins. Co.*, 55 A.D.3d 43, 47 (N.Y. App. Div. 2008) (holding that a letter sent to a policyholder requesting "13 sets of relevant documents and information as well as insurance information" so that counsel could "make a reasonable inquiry into the facts before filing a pleading with the courts" did not amount to a "claim" or "demand" because "[a]ny action that might have been contemplated . . . is implicitly conditioned upon the outcome of counsel's investigation of its merit.  Thus, the letter received by plaintiff is not 'an assertion of a legally cognizable damage, . . . a type of demand that can be defended, settled and paid by the insurer'").

In fact, in *Diamond Glass*, a case involving subpoenas and a search warrant served on AXIS's insured (documents that clearly have more legal effect than the Maryland AG's letter in this case), AXIS took a contrary position from the position it is now taking in this action and argued there that coverage was <u>not</u> triggered because subpoenas and search warrants do <u>not</u> constitute "demands for non-monetary relief," and the court in that case <u>agreed</u> with AXIS's position.  *Diamond Glass,* 2008 WL 4613170, at *4.  In *Diamond Glass*, in which AXIS was a co-defendant with Twin City Fire Insurance Co. and "concurred with TCFI's coverage position" (*id.* at *2), the district court rejected plaintiff-insured Diamond Glass's interpretation of the policy term "demands for non-monetary relief" and held that the plain meaning of this term demands a more narrow construction.  *Id.* at *4.  The court there held that "relief" specifically refers to "redress or benefit . . . that a party asks of a court," and that "subpoenas and search warrants do not fit within this meaning of the term 'relief.'"  If subpoenas and search warrants do

15

not rise to the level of a "demand for non-monetary relief," surely a letter seeking a voluntary

production of information and materials "so that we may determine the extent of your activities

and your compliance with the Maryland Business Opportunity Act" also does not rise to the level

of a "demand" for "relief."  In its February 19, 2013 letter, AXIS attempts to avoid the fact that it

took a contrary position in *Diamond Glass* by arguing that the relief at issue in the instant case is

"a type of injunctive relief" "demanded" by the Maryland AG (Spertus Aff., Ex. J  at p.7), but

that argument was expressly rejected by the Sixth Circuit.  Because, as a matter of law, the

Maryland AG's letter did not make a "demand for non-monetary relief," the Maryland AG's

letter does not constitute a Claim under Subsection a. of the Policy's definition for "D&O Claim"

and Section V.A of the Policy has no application.

> ### ii. The Maryland AG's letter did not commence an administrative proceeding by providing written notice identifying Multivend as an entity against whom a formal proceeding may be commenced.

AXIS next argues that the Maryland AG's letter falls within Subsection b.(iii) of the

Policy's definition for "D&O Claim" because it purportedly "commenced an administrative

proceeding against Multivend by providing written notice identifying Multivend as an entity

'against whom a formal proceeding may be commenced.'"  (Spertus Aff., Ex. D at p.5).

However, in its coverage determination letters, AXIS fails to identity any language in the

Maryland AG's November 26, 2007 letter that provides Multivend with such notice.  AXIS

argues that because the Maryland AG and Multivend entered into a Consent Order on December

15, 2009, and the Consent Order refers to itself as an "administrative proceeding," the letter sent

by the Maryland AG to Multivend two years earlier constitutes such notice.  (Spertus Aff., Ex. J

at p.4).  However, the 2009 Consent Order cannot be relied upon to establish that Multivend was

provided with notice of a "Claim" in 2007.  The 2009 Consent Order is a red herring that has

nothing to do with this dispute because the December 15, 2009 Consent Order was entered <u>after</u> the Policy's February 20, 2008 "Pending and Prior Claim Date."

AXIS argues that the caption of the Maryland AG's letter, which reads "Re: Multi Vend, LLC/Maryland File 2007-0532," establishes the Maryland AG's intent to commence a formal administrative proceeding against Multivend, and AXIS notes that the same file number appears on the 2009 Consent Order.  (*Id.*)  However, the common practice of an office affixing a file number to a letter did not constitute "notice" to Multivend in 2007 that it was an entity "against whom a formal proceeding may be commenced."

In its February 19, 2013 letter, AXIS argues that the Maryland AG's letter constitutes notice that a formal administrative proceeding may be commenced because it purportedly "[m]akes specific inquiries into Multivend's offers and sales of the Vendstar business opportunity – the activities that the [Maryland AG's] letter states constituted the <u>alleged</u> violations of the Maryland Business Opportunity Act."  (*Id.* at p.5 (emphasis added)).  AXIS also cites to the portion of the Maryland AG's letter that purportedly "[d]emands that Mulivend 'immediately cease all offers and sales of the Vendstar business opportunity' – which, again, were the activities that constituted the <u>alleged</u> violations of the Maryland Business Opportunity Act."  (*Id.* (emphasis added)).  AXIS argues that these so-called "allegations" in the Maryland AG's letter should have made it readily apparent to Mulivend that it was being identified as an entity against whom a formal proceeding may be commenced.  (*Id.*)

However, as a matter of law, the Maryland AG's letter does not contain any "allegations," and the Sixth Circuit's holding in *ProMedica*, overruling the district court holding relied upon by AXIS, spoke to this issue as well.  In *ProMedica*, the insurer OneBeacon similarly argued "that the FTC's August 6, 2010, letter informing ProMedica that the FTC was

17

transitioning its investigation to 'full-phase,' the FTC's August 9, 2010, resolution authorizing

the use of compulsory process, and the subsequent subpoenas and CIDs should have made it

'readily apparent' to ProMedica that the FTC alleged antitrust violations."  *ProMedica*, 524 Fed.

Appx. at 247 (emphasis added).  However, the Sixth Circuit held that none of those actions

constituted "Claims" because the FTC's letter, resolution, subpoenas and CID's did not contain

any "allegations," under the "plain and ordinary meaning" of that term.  The Sixth Circuit held:

> An "allegation" is "the act of declaring something to be true" or "something
> declared or asserted as a matter of fact, esp. in a legal pleading; a party's
> formal statement of a factual matter as being true or provable, without its
> having yet been proved."  *Black's Law Dictionary* 86 (9th ed. 2009).
>
> In August 2010, the FTC did not "assert to be true" or "declare" that antitrust
> violations had occurred or would occur if ProMedica acquired St. Luke's.
> Rather, the communications that ProMedica received from the FTC only
> indicated that the FTC sought to determine "whether" such violations had
> occurred or would occur.  The July 2010 letters that ProMedica received
> announcing the FTC's preliminary investigation . . . stated that the FTC sought
> only to determine whether further investigation was necessary. . . .  [E]ven
> after the FTC launched its "full-phase" investigation in early August, the FTC
> stopped short of asserting that ProMedica had committed antitrust violations.
> The FTC's August 9, 2010, resolution authorizing the use of compulsory
> process stated that the FTC sought only "to determine *whether* " ProMedica's
> acquisition of St. Luke's, if consummated, would violate antitrust laws. . . .
> [T]he FTC did not affirmatively accuse ProMedica of antitrust violations.
> Rather, it simply discussed in hypothetical terms the possibility that an
> antitrust violation had or would occur.  This is not enough to "allege"
> wrongdoing.  The FTC did not "allege" antitrust violations until January 6,
> 2011, when it commenced an administrative action against ProMedica.

*Id.* at 247-48.

Similarly, in the instant action, the Maryland AG's November 26, 2007 letter does not

"assert to be true" or "declare" that any violations of the Maryland Business Opportunity Act

occurred.  (Spertus Aff., Ex. H).  The Maryland AG's letter only seeks information and materials

to review "so that we may determine . . . your compliance with the Maryland Business

Opportunity Act."  (*Id.*)  Accordingly, the Maryland AG's letter did not provide notice of an

18

intent to commence an administrative proceeding against Multivend because it did not contain any allegations against Multivend.

Finally, AXIS argues that the Maryland AG's letter provided the required notice to Multivend because the Maryland AG's letter states that the Maryland AG "'has the authority to investigate and take action against 'any person who violates the Maryland Business Opportunity Act'" and "[r]eferences various civil remedies that the [Maryland AG] is entitled to seek for violations of the Maryland Business Opportunity Act." (Spertus Aff., Ex. J at pp.4-5). However, these general statements regarding the general authority of the Maryland AG do not constitute "written notice identifying Multivend as an entity 'against whom a formal proceeding may be commenced.'" Once again, the November 26, 2007 letter simply requests "information and materials" to determine *whether* Multivend is in compliance with the Act. (Spertus Aff., Ex. H). Although the Maryland AG has the ability to commence certain proceedings, the Maryland AG's November 26, 2007 letter does not notify Multivend that it may commence such proceedings against Multivend and, as a matter of law, the letter does not allege any wrongdoing. Accordingly, AXIS cannot rely on Subsection b.(iii) of the definition of "D&O Claim" to establish that the Maryland AG's letter constitutes a Claim.[2]

---

[2]     Although the Maryland AG's letter concludes by stating that "Failure to respond may result in more formal legal action," AXIS confirmed in its February 19, 2013 letter its agreement that this statement does not constitutes notice that the Maryland AG may commence formal administrative proceedings against Multivend for violations of the Maryland Business Opportunities Act. (Spertus Aff., Ex. J at p.5 ("[This] argument misinterprets AXIS's position and disregards numerous relevant facts and circumstances surrounding the [Maryland AG's] November 26, 2007 letter.")). The Maryland AG merely states that "failure to respond" to the letter "may" require the Maryland AG to obtain the information and materials requested through "formal legal action," such as by serving a subpoena, which under the holdings in *Diamond Glass* and *ProMedica*, among others, would not even constitute a Claim. When Mr. Weaver raised this point in his January 18, 2013 letter, AXIS confirmed in its February 19, 2013

*(cont'd)*

2. **Section V.A. does not apply because even if the Maryland AG's November 26, 2007 letter constitutes a "D&O Claim," it is not a Claim that arises from any "Wrongful Act."**

Section V.A. only applies to Claims arising from the same Wrongful Act or Interrelated Wrongful Acts.  (Spertus Aff., Ex. C at Section V.A.).  As was the case in *ProMedica*, Wrongful Act in the Policy underlying the instant action means "any actual or alleged" violation.  (*Id.* at Section III.B.5.)  In *ProMedica*, the Court of Appeals held that "none of the FTC's August 2010 actions . . . seek relief for a 'Wrongful Act'" because, as discussed above, the FTC did not assert any "allegations" in August 2010.  *ProMedica*, 524 Fed. Appx. at 247.  Similarly in this case, because the Maryland AG's November 26, 2007 letter does not contain any "allegations," under the plain and ordinary meaning of that term, the Maryland AG's letter does not raise any Wrongful Acts, which requires at a minimum an allegation of wrongdoing.  The Maryland AG's letter, therefore, cannot arise from "the same Wrongful Act" as the Indictment, which is required for Section V.A. to apply to exclude coverage.

3. **Section V.A. does not apply because Section V.A. relates only to the number of "limits of liability," and Mr. Weaver is not attempting to obtain an additional limit of liability through his tender of the Indictment.**

Separately, AXIS's reliance on Section V.A. is misplaced because Section V.A. only relates to the number of "limits of liability" available to the insured, and AXIS cannot rely on this provision for a purpose other than for which it was intended.  (Spertus Aff., Ex. C at Section V.A.).  Mr. Weaver is not attempting to obtain an additional $5 million limit of liability through his tender of the Indictment, and there was no tender of the Maryland AG's letter.

Other courts analyzing the same language that appears in Section V.A. of the Policy have

---

*(cont'd from previous page)*
response that its application of Subsection b.(iii) is based on "the caption and content" of the Maryland AG's letter separate from this particular statement.  (*Id.*)

limited the application of such language to the number of limits of liability and not to determining when a claim is deemed to have been first made.  In *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Ambassador Group, Inc.*, 691 F. Supp. 618 (E.D.N.Y. 1988), the court held that such language does not apply "to the issue of when claims are made" and that the "conclusion is buttressed by the fact that comparable language providing that claims arising out of the same act or interrelated acts constitute a single claim or relate back to when notice of the first claim was received, is notably absent from the remainder of the Policy."  *Id.* at 622 (emphasis added); *see also Helfand v. Nat'l Union Fire Ins. Co.*, 10 Cal.App.4th 869, 891 n.12 (1992) (holding that policy language stating "losses arising out of the same or interrelated acts of one or more of the Insureds shall be considered a single loss" "pertains solely to calculation of the retention amount to be borne by the insured and not to the issue of when loss is incurred"); *Homestead Ins. Co. v. Am. Empire Surplus Lines Ins. Co.*, 44 Cal.App.4th 1297, 1305 (1996) ("The quoted definition of 'claim' does not exist to make it possible for claims submitted during different policy periods to merge into a single claim.  Instead, the quoted definition of 'claim' exists to clarify other policy provisions relating to the 'deductible amount' and 'limits of liability' in the 'declarations' section of the policy."); *James River Ins. Co. v. Rinella & Rinella, Ltd.*, 2008 WL 4211150 (N.D. Ill. 2008), *rev'd on other grounds*, *James River Ins. Co. v. Kemper Cas. Ins. Co.*, 585 F.3d 382 (7th Cir. 2009) ("While these two acts are 'related wrongful acts' . . . [t]he term 'related wrongful acts' is applicable to establishing the limits of liability.").

Similarly, in the Policy underlying the instant action, Section V.A., which contains the heading "Limits of Liability," is the only section in the Policy addressing when claims arising from the same Wrongful Acts or Interrelated Wrongful Acts are "deemed to be first made." AXIS argues that because Section VIII.L. of the Policy provides that "[t]he descriptions in the

headings and subheadings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage," Section V.A. should not be limited to relating only to the "limits of liability" despite its heading and subheading to the contrary.  (Spertus Aff., Ex. J at p.12).  However, reading the Policy "in light of common speech and reasonable expectations of a businessperson" (*ABM Mgmt. Corp.*, 112 A.D.3d at 763), the fact that the provision only appears under the headings for "Limits of Liability" and "is notably absent from the remainder of the Policy" it is reasonable for Mr. Weaver to believe that Section V.A. only applies to the number of limits of liability, and to the extent there is any ambiguity with regard to this issue, such ambiguities must be "interpreted in favor of the insured."  *Federal Ins. Co.*, 18 N.Y.3d at 646. For this separate reason, even if the Maryland AG's letter constitutes a Claim that raises Wrongful Acts, which it does not, Section V.A. in any event cannot apply to exclude coverage.

### C.  Section IV.A.2. Of The Policy Does Not Provide A Basis For AXIS To Deny Mr. Weaver A Defense Of The Indictment.

The exclusion set forth in Section IV.A.2. Policy also does not bar coverage.  Under Subsection a. of Section IV.A.2., this exclusion applies if the Maryland AG's November 26, 2007 letter constitutes "a demand or other proceeding pending against" Multivend prior to the February 20, 2008 Pending or Prior Claim Date and it does not.  (Spertus Aff., Ex. J at p.13 ("Section IV.A.2. requires that a 'demand' or 'other proceeding' be pending against any Insured on or prior to February 20, 2008.")).  As explained above, the Maryland AG's letter requesting the voluntary production of information and materials is not a "demand" under the "plain and ordinary" meaning of that term.  *See ProMedica*, 524 Fed. Appx. at 252 ("[T]he Hold Separate Agreement . . . was not a 'written demand' for an injunction, and it did not 'commence' a 'proceeding' seeking an injunction.").  Moreover, there was no "proceeding pending" as a result of the Maryland AG's letter.  Indeed, AXIS's argument that the Maryland AG's letter constitutes

a "proceeding pending" under Section IV.A.2. flatly contradicts AXIS's other argument that the Maryland AG's letter falls within Subsection b.(iii) of the Policy's definition for "D&O Claim" because the letter purportedly "provid[ed] written notice identifying Multivend as an entity 'against whom a formal proceeding may be commenced.'"  On the one hand, AXIS is arguing that the Maryland AG's letter provided notice that a proceeding "may be commenced" in the future, while arguing on the other hand that the letter constitutes a "proceeding pending."  These two arguments cannot be squared with one another.  More importantly, as set forth above, the Maryland AG's letter did not provide Multivend with any notice that a proceeding may be commenced in the future, and therefore cannot be relied upon to establish that as of November 26, 2007 there was a "proceeding pending" against Multivend.  Additionally, to the extent that the undefined Policy terms "demand" and "proceeding pending" are ambiguous, such ambiguities must be resolved in Mr. Weaver's favor.  *Federal Ins. Co.*, 18 N.Y.3d at 646.

AXIS argues in the alternative that the Maryland AG's letter falls within Subsection b. of Section IV.A.2.  However, Subsection b. only applies if the purported Wrongful Acts raised in the Maryland AG's letter constitutes Interrelated Wrongful Acts with the Wrongful Acts underlying the Indictment, and as discussed above, the Maryland AG's letter does not raise any "Wrongful Acts" as that term is defined in the Policy, because the Maryland AG's letter does not make any "allegations."  *ProMedica*, 524 Fed. Appx. at 247-48 ("[T]he FTC sought only 'to determine *whether* 'ProMedica's acquisition of St. Luke's, if consummated, would violate antitrust laws. . . .  [T]he FTC did not affirmatively accuse ProMedica of antitrust violations. Rather, it simply discussed in hypothetical terms the possibility that an antitrust violation had or would occur.  This is not enough to 'allege' wrongdoing.").  Accordingly, Subsection b. of Section IV.A.2. also has no application, and AXIS cannot rely on this exclusion to deny Mr.

23

Weaver a defense against the Indictment.

### IV.    CONCLUSION

For the foregoing reasons, Mr. Weaver respectfully requests that the Court grant partial summary judgment for Mr. Weaver on his first cause of action for breach of insurance contract and his third cause of action for declaratory relief, and issue an order declaring that AXIS has a duty to defend Mr. Weaver against the Indictment.

Respectfully submitted,

Dated: February 7, 2014                SPERTUS, LANDES & UMHOFER, LLP


_____
James W. Spertus (admitted *pro hac vice*)
Ezra D. Landes (admitted *pro hac vice*)
1990 South Bundy Dr., Ste. 705
Los Angeles, California 90025
Tel: (310) 826-4700
Fax: (310) 826-4711
Email: jim@spertuslaw.com
Email: ezra@spertuslaw.com
Attorneys for Plaintiff Edward M. Weaver

24

## AFFIRMATION OF SERVICE

I, James W. Spertus, declare under penalty of perjury that a true and correct copy of the foregoing PLAINTIFF EDWARD M. WEAVER'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT was served on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

Paul T. Curley, Esq.
Kaufman Borgeest & Ryan LLP
200 Summit Lake Drive
Valhalla, New York 10595
*Attorneys for Defendant*

## BY FEDERAL EXPRESS

[X]     I placed such envelope for deposit with Federal Express Overnight Delivery with fees

thereon fully prepaid.


Dated: February 7, 2014                    SPERTUS, LANDES & UMHOFER, LLP


_____

James W. Spertus (admitted *pro hac vice*)
Ezra D. Landes (admitted *pro hac vice*)
1990 South Bundy Dr., Ste. 705
Los Angeles, California 90025
Tel: (310) 826-4700
Fax: (310) 826-4711
Email: jim@spertuslaw.com
Email: ezra@spertuslaw.com
Attorneys for Plaintiff Edward M. Weaver

25